UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREDERICK TOWNE MALL ASSOCIATES, | |
| Appellant, | Civ. No. |
| vs. | **04 CV 1 1 7 2 3 DPW** |
| THE GROUND ROUND, INC., | |
| Appellee-Debtor. | |
| In re: | |
| | Chapter 11 |
| THE GROUND ROUND, INC., et al., | Case No. 04-11235 (WCH) |
| Debtors. | (Jointly Administered) |

### MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION OF FREDERICK TOWNE MALL ASSOCIATES FOR STAY PENDING APPEAL

Appellant Frederick Towne Mall Associates ("Frederick Towne") submits this memorandum of law in support of its emergency motion for a stay pending its appeal of a final order entered by the United States Bankruptcy Court for the District of Massachusetts (Hillman, J.), which authorized one of the above-captioned Debtors (collectively, the "Debtors"), The Ground Round, Inc. ("TGR"), to assume and assign a certain non-residential real property lease (the "Frederick Lease" or the "Lease") between TGR, as tenant, and Frederick Towne, as landlord, to a newly-formed shell corporation called Frederick Pubs LLC ("Frederick Pubs").

## PRELIMINARY STATEMENT

On July 29, 2004, the Bankruptcy Court entered its order (Exhibit A hereto) authorizing the assumption and assignment of the Frederick Lease, pursuant to §365 of title 11 of the United States Code (the "Bankruptcy Code"), to Frederick Pubs. Pursuant to Bankruptcy Rule 6006(d), the Bankruptcy Court's order is automatically stayed for 10 days in order to permit Frederick Towne to file its appeal and seek a further stay from this Court. Frederick Towne has until Monday, August 9, 2004, to obtain such a stay. Otherwise, the transaction will be consummated and Frederick Towne's appeal will be rendered moot.

As discussed below, Frederick Towne has satisfied the requirements of Bankruptcy Rule 8005 for the granting of a stay pending appeal. First, Frederick Towne has a likelihood of success on the merits of its appeal because the Debtors failed to satisfy the legal standard for "adequate assurance of future performance" under the Bankruptcy Code. Specifically, the Debtors failed to make the requisite showing that the financial condition and operating performance of the proposed assignee, Frederick Pubs, and its guarantors "shall be similar to the financial condition and operating performance of [debtor TGR] as of the time [TGR] became the lessee under the lease." *See* 11 U.S.C. § 365(b)(3)(A).

Second, Frederick Towne will be irreparably harmed if the stay is not granted because, as noted above, consummation of the assignment will moot the appeal and leave Frederick Towne with no legal remedy to challenge the proposed assignment. Further, the assignment will cause Frederick Towne to lose substantial goodwill with other tenants and patrons of its shopping mall. *See* Affidavit of Thomas K. Bradley dated July 30, 2004 (the "Bradley Aff.") at ¶2.

Third, Frederick Towne will not have an adequate legal remedy in the event of Frederick Pubs' default under the Lease. Frederick Pubs and its guarantors are highly leveraged. They

2

simply do not have the capital, liquidity, or borrowing capacity necessary to meet the financial burden of operating a Ground Round restaurant. Further, Frederick Towne holds no collateral or security, but merely guaranties which are only as good as the financial strength of the guarantors who stand behind them. In the event of a reversal of the Bankruptcy Court's Order, Frederick Towne's damage remedy is inadequate if it is ineffective.

Finally, any harm that may result to the Debtor from the entry of an order staying the proposed assignment pending Frederick Towne's appeal can be fully mitigated by a bond in the amount of $350,000. This figure is compromised of the rent that TGR is required to pay to Frederick Towne for one year (approximately $185,000) plus the consideration to be paid to TGR by Frederick Pubs in connection with the assignment (approximately $157,000).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Frederick Towne is a landlord under a certain lease dated as of July 23, 1993, pursuant to which one of the Debtors, TGR, as tenant, leases certain property (the "Premises") consisting of 5,734 square feet located in the Frederick Towne Mall, U.S. Route 40, in Frederick, Maryland. *See* Affidavit of Lisa M. Solomon dated August 2, 2004 (the "Solomon Aff.") at ¶3. The Premises are located within a "shopping center" as that term is used in §365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.3d 1081, 1086-87 (3d Cir. 1990).

On February 19, 2004 (the "Filing Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code with the Clerk of the United States Bankruptcy Court for the District of Massachusetts. Since the Filing Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to §§1107 and 1108 of the Bankruptcy Code. *See* Solomon Aff. at ¶4.

On April 14, 2004, the Debtors conducted a sale by public auction of a substantial portion

3

of their assets, including their franchisor rights, intellectual property and related assets (the "Franchise Assets"), as well as nine of their company owned leases of non-residential real property, including the Frederic Lease. U.S. Restaurant Properties Operating, L.P. ("USROP") was the high bidder at the auction. Substantially all of the franchisees and the lessors, including Frederick Towne, objected to the proposed sale. *See* Solomon Aff. at ¶5.

The Debtors and the franchisees subsequently settled the franchisees' objections, which resulted in the execution of a settlement agreement that granted certain franchisees the right to acquire certain leaseholds, including the Frederick Lease. *See* Solomon Aff. at ¶6. On June 18, 2004, the Debtors filed a motion seeking an order of the Bankruptcy Court approving the settlement. Frederick Towne objected to the Debtors' motion on the grounds, *inter alia*, that (a) the Debtors failed to provide adequate assurance of future performance by the assignee, Frederick Pubs, and its guarantors, pursuant to §365 of the Bankruptcy Code. *See* Solomon Aff. at ¶8. The Bankruptcy Court granted the Debtors' motion for approval of the sale of the franchise assets at a hearing held on July 7, 2004, and deferred consideration of the sale and assumption and assignment of certain non-residential leases, including the Frederick Lease, to a later date.

Section 365(b)(3)(A) of the Bankruptcy Code contains a heightened standard for determining whether or not a "shopping center" lease may be assumed and assigned. In order to find "adequate assurance of future performance," the Bankruptcy Court must find that "the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease."

On July 20, 2004, the Bankruptcy Court considered the Debtors' request to assume and assign the Frederick Lease, and the objection of Frederick Towne thereto. *See* Solomon Aff. at

4

¶9. At the close of the hearing, the Bankruptcy Court acknowledged that it had not been provided with any evidence regarding the financial condition or operating performance of the debtor-tenant, TGR, but only the consolidated financial statements for all of the Debtors. *See* Solomon Aff. at ¶10. The Bankruptcy Court refused to give any weight to the Debtors' consolidated 10-K for the year ended October 2, 1994, noting that the consolidated financials did not establish the financial condition of the particular debtor-tenant in question, TGR.

Notwithstanding the Debtors' failure to comply with Section 365(b)(3)(A), the Bankruptcy Court granted the Debtors' motion, relying primarily upon certain guaranties offered by the principals of the assignee and noting for the record that the principals' willingness to put themselves personally on the line gave the Court assurances. The Court did not, however, compare the financial condition of TGR at the time of the inception of the Lease with the financial condition of Frederick Pubs and its guarantors.

At the close of the July 20, 2004 hearing, Frederick Towne requested a stay pending appeal. The Bankruptcy Court denied Frederick Town's request, finding that Frederick Towne was not likely to succeed on the merits of an appeal. *See* Solomon Aff. at ¶12.

On July 29, 2004, the Bankruptcy Court entered its order authorizing the assumption and assignment of the Frederick Lease. *See* Exhibit A hereto. Pursuant to Bankruptcy Rule 6006(d), the Bankruptcy Court's order is automatically stayed for 10 days in order to permit Frederick Towne to file its appeal and seek a further stay from this Court. Frederick Towne filed its notice of appeal (Exhibit B hereto) with the Bankruptcy Court on Wednesday, August 4, 2004. Frederick Towne has until Monday, August 9, 2004, to obtain a stay pending appeal. Otherwise, the transaction will be consummated and Frederick Towne's appeal will be rendered moot. *See* 11 U.S.C. § 363(m) (reversal on appeal of an order authorizing a sale or lease of the debtor's

property does not affect the validity of such sale or lease absent a stay pending appeal).

## ARGUMENT

### FREDERICK TOWNE HAS MET THE REQUIREMENTS OF BANKRUPTCY RULE 8005

A stay pending appeal of a bankruptcy court order may be granted if the following conditions are met:

    (a)    there is likelihood of success on the merits of the appeal;

    (b)    unless a stay is granted the moving party will suffer irreparable injury;

    (c)    the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and

    (d)    the public interest would not be adversely affected by the issuance of the stay.

*See In re Great Barrington Fair & Amusement, Inc.*, 53 B.R. 237, 239 (Bankr. D. Mass. 1985); *In re Miraj & Sons, Inc.*, 201 B.R. 23, 26 (Bankr. D. Mass. 1996). *See also* Bankruptcy Rule 8005.

The conditions for a stay pending appeal need not be given equal weight. *Great Barrington*, 53 B.R. at 239; *see also In re Bankruptcy Appeal of Allegheny Health, Educ.*, 252 B.R. 309, 321 (Bankr. W.D. Pa. 1999) (no one factor will necessarily determine the outcome of a stay motion, rather court's determination entails a delicate balancing of all elements). Furthermore, "[t]hese factors are not to be applied in a vacuum but instead must be viewed in light of the importance of the right of appeal and preservation of the status quo during the appeal." *Miraj*, 201 B.R. at 26 (*quoting In re Howley*, 38 B.R. 314, 315 (Bankr. D. Minn. 1984)).

Courts have recognized the problematic nature of prevailing on a motion for a stay before a bankruptcy judge; namely that the bankruptcy judge must find that he or she committed a reversible error. Based on this conundrum, courts have considered motions for a stay in the

district court *de novo* rather than review them as an appeal of the bankruptcy court's denial of the motion for stay. *See, e.g., In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 514-15 (W.D. Tex. 2000); *see also Miraj*, 201 B.R. at 26 ("The trial court in effect would be saying that it decided the case improperly and should be reversed. Human nature – judicial or otherwise – does not go that far. If the trial court really is convinced that it made a reversible error it should indicate its willingness to consider vacating its order and the appeal would become moot.") (*quoting In re Public Serv. Co.*, 116 B.R. 347, 348-49 (Bankr. D.N.H. 1990)).

A.  Frederick Towne Is Likely to Succeed on the Merits of the Appeal

Likelihood of success is met if movant has a "substantial case" or a substantial possibility of success. *See Miraj*, 201 B.R. at 26-27; *see also In re Handel*, 242 B.R. 789, 792 (Bankr. D. Mass. 1999); *In re Holtmeyer*, 229 B.R. 579, 582 (E.D.N.Y. 1999) ("Cases also emphasize that the single most important factor is likelihood of success on the merits or a serious question going to the merits and a tipping of the equities in favor of the movant."). In the case at bar, Frederick Towne has a substantial case, and in fact, a likelihood of succeeding on the merits of its appeal.

1.  The Debtors Failed to Satisfy the Express Conditions of 11 U.S.C. §365(B)(3).

Under the Bankruptcy Code, a debtor may assign an unexpired lease of non-residential real estate only if the assignee provides adequate assurance of future performance. 11 U.S.C. § 365(f)(2)(B). In making a determination of adequate assurance, courts focus primarily on the assignee's ability to satisfy the financial obligations imposed by the lease; i.e., the ability to pay the rent, and whether the landlord will be given the full benefit of the bargain. *In re Evelyn Byrnes*, 32 B.R. 825, 829 (Bankr. S.D.N.Y. 1983). Assignees are bound by these common law interpretations of adequate assurance and must present sufficient proof of their ability to perform.

When a lease involves property in a shopping center, as here, the Bankruptcy Code

provides a heightened standard of adequate assurance. *See In re Service Merchandise Co., Inc.*, 297 B.R. 675, 681 (Bankr. M.D. Tenn. 2002). Section 365 provides that adequate assurance of future performance with respect to the assignment of a lease in a shopping center, such as the proposed assignment of the Lease here, includes adequate assurance that:

> the financial condition and operating performance of the proposed assignee and its guarantors shall be similar to the financial condition and operating performance of the debtor as of the time the debtor became the lessee under the lease.

11 U.S.C. §365(b)(1)(A).[1] Case law has construed this provision to require that the financial condition and operating performance of the proposed assignee and its guarantors must be "at least as strong as was the Debtors' at the commencement of the lease term. *See, e.g., In re Casual Male Corp.*, 120 B.R. 256, 264 (Bankr. D. Mass. 1990). Case law unequivocally establishes that the debtor bears the burden of demonstrating adequate assurance and each of its requirements

---

[1] The full text of §365(b)(1)(A) is as follows:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance –
>
> > (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, <u>that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease</u>;
> >
> > (B) that any percentage rent due under such lease will not decline substantially;
> >
> > (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
> >
> > (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

(emphasis added).

8

under § 365 by competent proof. *See In re R & J, Inc.,* 140 B.R. 316, 317 (Bankr. D. Mass 1992); *In re Bahia Resorts,* 46 B.R. 44, 48-49 (Bankr. M.D. Fla. 1985); *In re PRK Ent., Inc.,* 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999); *In re Rachels Inds., Inc.,* 109 B.R. 797, 811-13 (Bankr. W.D. Tenn. 1990); *see also In re Truffles of Sarasota, Inc.,* 30 B.R. 666, 669 (Bankr. M.D. Fla. 1983).

At the hearing, the Debtors failed to put forth a scintilla of evidence with respect to the financial condition and operating performance of the debtor-tenant, TGR. In his oral ruling from the bench, Judge Hillman acknowledged that no evidence had been presented with respect to the financial condition or operating performance of TGR in 1993, but only consolidated financial statements of the Debtors in the form of their 10-K for the fiscal year ended October 2, 1994. Judge Hillman refused to accept the Debtors' 10-K as he found that the consolidated financials shed no light on the financial condition of the debtor-tenant, TGR. Nevertheless, Judge Hillman side-stepped the issue by finding that the guaranties of certain principals and affiliates of Frederick Pubs provided adequate assurance of future performance under the Lease.

The Bankruptcy Court's failure to compare the financial condition of the tenant-debtor, TGR, as of the inception of the lease with the financial condition of the proposed assignee, Frederick Pubs, and its guarantors constitutes a clear and unmistakable error of law. Thus, a stay of the Bankruptcy Court's order should be entered because Frederick Towne has a high likelihood of prevailing on the merits of its appeal.

    2.    The Bankruptcy Court Was Clearly Erroneous in Finding Adequate Assurance of Future Performance

To the extent the Bankruptcy Court could or should have considered the Debtors' consolidated financial statements, the evidence compelled a finding that the requirements for adequate assurance had not been satisfied. The Debtors' 10-K for the fiscal year ended October

9

2, 1994 unequivocally established that the financial condition and operating performance of the proposed assignee and its guarantors is not remotely similar to the financial condition and operating performance of the Debtors (on a consolidated basis) as of 1993, when TGR became a tenant under the Lease.

The Debtors' 10-K contained audited financial information. It demonstrated that at the time TGR became a tenant under the Lease, the Debtors had a net worth of approximately $65 million, revenue in excess of $240 million, increasing profit from the three prior years, and operating income of more than $6 million resulting from more than 200 restaurants. On the other hand, the evidence with respect to Frederick Pubs and its guarantors consisted mostly of unaudited financials, which showed that Frederick Pubs is a shell corporation, without the requisite capitalization and funding to operate a Ground Round restaurant, with no means or prospects of obtaining additional financing in the event its projections are not met, and whose guarantors are either highly leveraged or have few liquid assets.

The evidence further demonstrated that Frederick Pubs principals' past operating performance was poor. For example, with respect to one of the entities at which they operate their three Ground Round restaurants, on $4.1 million of sales, their statements showed an operating loss of $167,012 for year 2003, with an earnings deficit of $479,822, and a net decrease in cash of $26,352. As to the personal statements of the proposed individual guarantors, their suggested net worth was illusory, comprised mostly of retirement plans and IRA's as to which there would be significant taxes due if withdrawn, and which would in any event likely be unreachable to satisfy claims, and closely held corporations with totally speculative value. Of the purported $4 million listed on their financial statements, there was a grand total of $10,000 in cash. As to the IOC which was offered as a guarantor, the evidence also demonstrated that it too

10

had little liquidity, with purported assets of $5.6 million comprised mostly of the value of the trademark being purchased from the Debtors, with a minimal amount of cash, and significant contingent liabilities in an undetermined amount that the IOC had agreed to assume as a result of its guaranty of various of the Leases being acquired by the franchisees.

The Bankruptcy Court applied a less stringent standard in finding adequate assurance, which it was not authorized to do. The error of the Bankruptcy Court is even more glaring here because there was another bidder that was clearly more qualified to perform the obligations of the Lease and willing to pay more consideration for the Lease, which would have more closely afforded Frederick Towne the benefit of its bargain.[2] In any event, to foist upon Frederick Towne a tenant of dubious creditworthiness, with guaranties of equally dubious value, all because the Debtors wanted to serve up the Lease to an agreed upon franchisee, was a poorly conceived transaction on the part of the Debtors and one that the Bankruptcy Court should not have condoned under the guise of adequate assurance.

Frederick Towne will succeed on the merits of its appeal because the Debtors failed to satisfy the express conditions of §365(b)(3) for adequate assurance. Therefore, Frederick Towne respectfully requests a stay of the Bankruptcy Court's order so that its appellate rights may be preserved.

---

[2] Fudruckers, Inc. ("Fudruckers") was the high bidder at the auction of the Frederick Lease. Subsequently, the Debtors agreed to assign the Lease for less consideration to Frederick Pubs as part of a global deal. Fudruckers objected to the assignment and requested a further opportunity to bid on the Lease. The Bankruptcy Court overruled Fudrucker's objection and denied its request, even though Fudruckers had been the high bidder and was far more credit worthy and suitable as a tenant than Frederick Pubs.

11

B.     Frederick Towne Will Suffer Irreparable Harm If the Stay is Not Issued.

Frederick Towne will be exposed to severe harm from a number of factors if a stay is not granted. First, absent a stay, Frederick Towne will be prevented from pursuing appellate review, and will be left with no legal remedy to challenge the proposed assignment. *See* 11 U.S.C. § 363(m) (reversal on appeal of an order authorizing a sale or lease of the debtor's property does not affect the validity of such sale or lease absent a stay pending appeal). The loss of its right to appeal, a very significant right, is neither speculative nor remote, but actual and imminent, and would be a significant loss for Frederick Towne here. *See, e.g., Miraj,* 201 B.R. at 26 (factors for granting of a stay "are not to be applied in a vacuum but instead must be viewed in light of the importance of the right of appeal and preservation of the status quo during the appeal.") (*quoting In re Howley*, 38 B.R. 314, 315 (Bankr. D. Minn. 1984)).

Second, absent a stay, Frederick Towne will lose goodwill with its valuable patrons at the Frederick Towne mall and its other tenants in the mall. *See generally* Bradley Aff., filed herewith. The closure of the Ground Round restaurant which sits at the main entrance to the mall has tarnished the mall's presence. *Id.* Further closure which is authorized by the Bankruptcy Court's Order, for an additional 90 days, will cause Frederick Towne to lose shoppers. *Id.* Many shoppers require a sit down restaurant, and they will go elsewhere outside the Frederick Maryland community, to Frederick Towne's competitor shopping area. *Id.*

Third, Frederick Towne will not have an adequate legal remedy against Frederick Pubs in the event of a future default under the Lease. As noted above, the record before the Bankruptcy Court establishes that the proposed assignee and its guarantors are highly leveraged, do not have the capital and liquidity necessary to operate a Ground Round restaurant, and also do not have any borrowing capacity in the event their cash projections are not met. Further, Frederick Towne

12

holds no collateral or security, but merely guaranties which are only as good as the guarantors who stand behind them. Thus, a future default under the Lease will leave Frederick Towne with no ability to recover its damages, including the significant losses that would result from yet another extended closing of the only sit-down restaurant in its shopping center.

Frederick Towne's damage remedy is inadequate if it is ineffective. *See, e.g., Permian Producers,* 263 B.R. at 522 (monetary injury resulting from distribution of assets pursuant to confirmed plan constitutes irreparable injury); *Barrier,* 776 F.2d at 1298-99 (finding irreparable damage from loss or decline of collateral). In *Miraj,* 201 B.R. 23 (Bankr. D. Mass. 1996), a secured creditor of a chapter 11 debtor sought a stay pending appeal of the bankruptcy court's order confirming the debtor's plan of reorganization and fixing the amount of the creditor's secured claim. The appellant was the holder of notes from the debtor and mortgages on certain of the debtor's condominiums. The order fixing the amount of the secured claim left the appellant with a substantial deficiency. The debtor argued that a stay should not be entered because only money damages were at stake. The district rejected this argument and granted the stay on the ground that consummation of the plan would leave the appellant with no ability to recover its damages in the event of a reversal on appeal. *Id.* at 27.

Here, when one considers the loss of Frederick Towne's appellate rights as well as the loss of goodwill, the impact on other tenants, the tarnished image of the mall, dubious financial condition of the proposed assignee and guarantors, the lack of any security or collateral, the prospect of future defaults under the Lease, and the significant risk of further closure of the Premises, this Court has ample grounds upon which to find that Frederick Towne will be irreparable harmed if a stay pending appeal is not granted. Thus, Frederick Towne respectfully requests that its emergency motion be allowed.

13

C. <u>Balancing of Harm Weighs in Favor of Frederick Towne</u>

A stay is in the interest of all parties. A stay will allow the appellate court to fully analyze and determine the adequate assurance issues, and to avoid proceedings that Frederick Towne would be compelled to commence in pursuing its collection efforts against a shell corporation and its guarantors in connection Frederick Pubs' default under the Lease, which based upon the record appear likely, and the damages related thereto.

Also, it is significant here that the assumption and assignment of the Frederick Lease is separate from the sale of the franchise assets, which will form the basis for the Debtors' plan of reorganization and the ultimate distributions to creditors. A stay of the consummation of the assumption and assignment of the Frederick Lease will not adversely affect the closing of the sale of the franchise assets and the $4.8 million consideration to be paid to the Debtors. The Debtors cannot complain that the stay will be injurious to them or their efforts at developing and implementing a plan of reorganization. The evidence is just the opposite.

The Bankruptcy Court's order authorizing the sale of the franchise assets provides that the closing is not dependent upon a closing on any "New Restaurant Location," such as the Frederick Lease, and that the buyer of the franchise assets is obligated to close notwithstanding any failure by the Debtors to close on such leases. Thus, if the closing on the assumption and assignment of the Frederick Lease is stayed pending appeal, the Debtors can move forward with their plan of reorganization without any adverse effect from a stay.

Finally, any harm that may result to the Debtor from the entry of an order staying the proposed assignment pending Frederick Towne's appeal can be fully mitigated by a bond in the amount of $350,000. This figure is compromised of the rent that TGR is required to pay to Frederick Towne for one year (approximately $185,000) plus the consideration to be paid to TGR

14

by Frederick Pubs in connection with the assignment (approximately $157,000).

D.  The Public Interest is Served by the Issuance of a Stay

Frederick Towne accepted TGR as its tenant in the early 1990's, an affiliate of a multi million dollar company with more than 200 restaurants, and annual revenues in excess of $240 million. The Lease imposes strict requirements for assignment. This benefits not only Frederick Towne, but also the other tenants in the shopping center, and fosters the success of the shopping center and economic development in the locale where the shopping center is located. This is not a two party dispute. To allow an assignment to occur here, without the requisite showing of adequate assurance, surely would not benefit the public interest.

## CONCLUSION

For the foregoing reasons stated and on the authorities cited, Frederick Towne respectfully requests that its emergency motion for stay pending appeal be allowed.

FREDERICK TOWNE MALL ASSOCIATES,

By its counsel,

Dated: August 5, 2004

Martin P. Desmery (BBO# 550133)
Craig and Macauley
 Professional Corporation
600 Atlantic Avenue
Boston, MA 02210
(617) 367-9500

-and-

Lisa M. Solomon
Law Offices of Lisa M. Solomon
909 Third Avenue, 19th Floor
New York, NY 10022
(212) 471-0067