UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FREDERICK TOWNE MALL
ASSOCIATES,

       Appellant,

   vs.

THE GROUND ROUND, INC.,

       Appellee-Debtor.

In re:

THE GROUND ROUND, INC., et al.,

       Debtors.

Civ. No.

**04CV 1 1 7 2 3 DPW**

Chapter 11

Case No. 04-11235 (WCH)

(Jointly Administered)

## AFFIDAVIT OF LISA M. SOLOMON IN SUPPORT OF EMERGENCY MOTION OF FREDERICK TOWNE MALL ASSOCIATES FOR STAY PENDING APPEAL

STATE OF NEW YORK     )
                       ) ss.:
COUNTY OF NEW YORK   )

LISA M. SOLOMON., being duly sworn, deposes and says:

1.      I am (a) an attorney at law, admitted to practice in the State of New York in the federal and state courts, a member of Law Offices of Lisa M. Solomon, co-counsel for the movant Frederick Towne Mall Associates ("Frederick Towne"), and (b) personally familiar with the facts stated herein.

2.      This affidavit is submitted in support of Frederick Towne' emergency motion for

1

a stay pending appeal, pursuant to Bankruptcy Rule 8005 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), of the relief granted by the United States Bankruptcy Court

for the District of Massachusetts, Eastern Division (the "Bankruptcy Court") (Hillman, J.), which

authorized one of the above-captioned Debtors (collectively, the "Debtors"), The Ground Round,

Inc. ("TGR"), to assume and assign a certain non-residential real property lease (the "Frederick

Lease" or the "Lease") between TGR, as tenant, and Frederick Towne, as landlord, to Frederick

Pubs LLC ("Frederick Pubs").

## BACKGROUND

3.          Frederick Towne is a landlord under a certain lease dated as of July 23, 1993,

pursuant to which one of the Debtors, TGR, as tenant, leases certain property (the "Premises")

consisting of 5,734 square feet located in the Frederick Towne Mall, U.S. Route 40, in the City

of Frederick, County of Frederick, State of Maryland.  The Lease requires that the tenant pay

monthly basic rent and additional rent based on annual gross sales.  The Lease provides for an

initial ten year term ending June 30, 2004, and for two five year renewal options.

Chapter 11 Case

4.          On February 19, 2004 (the "Filing Date"), each of the Debtors filed a voluntary

petition under chapter 11 of the Bankruptcy Code with the Clerk of this Court.   Since the Filing

Date, the Debtors have continued to operate their businesses and manage their properties as

debtors in possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

5.          On April 14, 2004, the Debtors conducted a sale by public auction of a substantial

portion of their assets, including their franchisor rights, intellectual property and related assets

(the "Franchise Assets"), and nine of their company owned leases of non-residential real

property, including, inter alia, the Frederic Lease.  U.S. Restaurant Properties Operating, L.P.

("USROP") was the high bidder at the auction for all of the Debtors' assets, and Fudruckers, Inc. ("Fudruckers") was the high bidder for the Frederick Lease in the event that the Debtors' assets were not sold to USROP Substantially all of the franchisees, and lessors, including Frederic Towne, objected to the proposed sale.

6.           The Debtors and the franchisees subsequently settled the franchisees' objections, which resulted in the execution of that certain Settlement Agreement and Assumption and Assignment Agreement for Franchise Assets (the "Franchisee Agreement"). The Franchisee Agreement provides that, inter alia, conditioned upon a closing of the sale of the Franchise Assets to Independent Owners Cooperative, LLC ("IOC"), certain franchisees (the "Franchisees") would have the right to acquire certain leaseholds and related personal property, referred to therein as the New Restaurant Locations, including the Frederick Lease.

7.           On June 18, 2004, the Debtors filed a motion brought on by order to show cause seeking an order of the Bankruptcy Court approving the Franchisee Agreement, which as discussed above, provided for, inter alia, the sale of the Franchise Assets and the assumption and assignment of the Frederick Lease to Frederick Pubs, a franchisee.[1]

8.           Frederick Towne objected to the Debtors' motion on the grounds that, inter alia, the Debtors failed to provide adequate assurance of future performance by the assignee, Frederick Pubs, and its guarantors, and that by the assignment of the Frederick Lease, the Debtors were seeking to impermissibly modify certain terms of the Lease in violation of the Bankruptcy Code and Frederick Towne's state law rights.

9.           The Bankruptcy Court granted the Debtors' motion for approval of the sale of the

Franchise Assets at a hearing held before the Bankruptcy Court on July 7, 2004, and deferred

consideration of the sale and assumption and assignment of certain New Restaurant Locations,

including the Frederick Lease, to a later date.  On July 20, 2004, the Bankruptcy Court

considered the Debtors' request to sell and assume and assign the Frederick Lease, and the

objection of Frederick Towne thereto.[2]

10.        At the close of the hearing held on July 20, 2004, the Bankruptcy Court granted

the Debtors' motion to assume and assign the Lease, finding that adequate assurance had been

provided pursuant to §365.  The Bankruptcy Court acknowledged that the Court had not been

provided with any financials with respect to the financial condition or operating performance of

the debtor-tenant, TGR, but only the consolidated financial statements for the Debtors consisting

of the Debtors' 10-K for the year ended October 2, 1994.

11.        In its ruling with respect to adequate assurance, the Bankruptcy Court relied

primarily upon certain guaranties offered by the principals of the assignee, noting for the record

that the principals' willingness to put themselves personally on the line gave the Court

assurances, although the Court did not engage in any analysis of the financial condition or

operating performance of Frederick Pubs or its guarantors.  The Bankruptcy Court failed to give

weight to the Debtors' consolidated 10-K for the year ended October 2, 1994, noting that the

---

[1]   If the Franchise Assets were not sold to IOC and the Franchisees, by the motion,
approval was sought of the sale of the Franchise Assets and certain other leaseholds, including
the Frederic Towne Lease,  to USROP, or its assignees.

[2]   At the July 7, 2004 hearing and the adjourned hearing, Fudruckers objected to the sale
of the Frederick Lease to Frederick Pubs, arguing that Fudruckers should be declared the high
bidder of the Lease and not Frederick Pubs who had not even bid on the Lease at the Court
ordered auction in accordance with Court approved bidding procedures.  Alternatively,
Fudruckers requested that the Court permit renewed bidding for the Lease. The Court overruled
Fudruckers' objection.

consolidated financials did not carry weight with respect to the financial condition of the tenant. The Bankruptcy Court also found that Frederick Towne's state law rights could not be modified through the assignment.[3]   The Bankruptcy Court's ruling at the July 20, 2004 hearing was memorialized in an order dated July 27, 2004, entered on July 29, 2004.

12.       At the close of the July 20, 2004 hearing, Frederick Towne requested a stay pending appeal. The Bankruptcy Court denied Frederick Town's request, finding that Frederick Towne would not likely succeed on the merits of an appeal. As discussed below, the record before the Bankruptcy Court amply demonstrated the facts required for a stay under Bankruptcy Rule 8005, and that Frederick Towne would likely succeed on appeal.

## CAUSE EXISTS FOR PROCEEDING FOR A STAY IN THE DISTRICT COURT ON AN EXPEDITED BASIS

13.       It is imperative that Frederick Towne's request for an emergency hearing be granted. Pursuant to Bankruptcy Rule 6006(d), the Debtors are automatically stayed from consummating the assumption and assignment of the Frederick Towne Lease for 10 days after entry of the Bankruptcy Court's Order. Absent the entry of a stay pending appeal, the Debtors will be able to close on the assumption and assignment of the Lease on August 9, 2004, and Frederick Towne's appeal will be rendered moot.

14.       As set forth in the accompanying memorandum of law, a stay pending appeal is necessary because Frederick Towne is likely to succeed on the merits of its appeal. Under the

---

[3]   The Lease prohibits the tenant from encumbering the Lease without the landlord's consent. As part of its financing with respect to the acquisition of the Lease, Frederick Pubs had agreed to assign the Lease to its lender without Frederick Towne's consent. Based upon the Bankruptcy Court's ruling, as a condition to the assignment of the Lease, Frederick Pubs was directed by the Bankruptcy Court to renegotiate the terms of its financing with its lender and have the Lease removed from the collateral securing Frederick Pub's loan.

Bankruptcy Code, a debtor may assign an unexpired lease only if adequate assurance of future performance by the assignee of such lease is provided. 11 U.S.C. §365(f)(2)(B). In evaluating whether adequate assurance of future performance has been provided, courts have focused primarily on the assignee's ability to satisfy the financial obligations imposed by the lease, and whether the landlord will be given the full benefit of the bargain. Assignees are bound by these common law interpretations of adequate assurance and must present sufficient proof of their ability to perform.

15.         When a lease involves property in a shopping center, as here, the Bankruptcy Code provides a heightened standard of adequate assurance. Section 365 provides that adequate assurance of future performance with respect to the assignment of a lease in a shopping center includes adequate assurance that:

> the financial condition and operating performance of the proposed assignee and its guarantors shall be similar to the financial condition and operating performance of the debtor as of the time the debtor became the lessee under the lease.

11 U.S.C. §365(b)(1)(A).

16.         I represented Frederick Towne at the hearing on the Debtors' motion to assume and assign the Lease. The Debtors failed to put forth a scintilla of evidence with respect to the financial condition and operating performance of the tenant, TGR. The Bankruptcy Court's ruling acknowledged that no evidence had been presented with respect to the financial condition or operating performance of the debtor-tenant under the Lease, TGR, but only consolidated financial statements of the Debtors consisting of the Debtors' consolidated 10-K for the year ended October 2, 1994. The Bankruptcy Court failed to accept the Debtors' 10-K on a consolidated basis as it determined that the consolidated financials did not inform the Court of

the financial condition of the debtor-tenant, TGR.

17.        Having failed to present any evidence specific to the financial condition and operating performance of the debtor-tenant, TGR, as of the commencement of the term of the Lease, the Debtors failed to satisfy the legal standard for adequate assurance as set forth in §365(B)(3). In that regard, the Bankruptcy Court was required to evaluate the financial condition and operating performance of the debtor when it became the tenant under the Lease. This it did not do. The Bankruptcy Court was clearly wrong in its conclusion that adequate assurance had been provided.

18.        Frederick Towne has a likelihood of success on its appeal for the further reason that had the consolidated financials been accepted by the Court, and if it was appropriate and required for the Court to consider such financials in making its determination of adequate assurance, the Bankruptcy Court would have been compelled to find that the requirements for adequate assurance had not been satisfied. Applying the standard under §365(b)(3) to Frederick Pubs and its guarantors should have rendered Frederick Pubs a totally and patently unfit assignee of the Lease. The Debtors' 10-K for the year ended October 2, 1994 unequivocally established that the financial condition and operating performance of the proposed assignee and its guarantors is not remotely similar to the financial condition and operating performance of the Debtors (on a consolidated basis) when TGR became a tenant under the Lease.

19.        The Debtors' 10-K for the year ended October 2, 1994 contained audited financial information. It demonstrated that at the time TGR became a tenant under the Lease, the Debtors had a net worth of approximately $65 million, revenue of in excess of $240 million, increasing profit from the three prior years, and operating income of more than $6 million resulting from their more than 200 restaurants. On the other hand, the evidence with respect to

Frederick Pubs and its guarantors consisted mostly of unaudited financials. Assuming the validity of those statements, they showed that Frederick Pubs is a shell corporation, without the requisite capitalization and funding to operate a Ground Round restaurant, with no means or prospects of obtaining additional financing in the event its projections are not met, and whose guarantors are either highly leveraged or have little if few liquid assets.

20. The evidence further demonstrated that Frederick Pubs principals' past operating performance was poor. For example, with respect to one of the entities at which they operate their three Ground Round restaurants, on $4.1 million of sales, their statements showed an operating loss of $167,012 for year 2003, with an earnings deficit of $479,822, and a net decrease in cash of $26,352.

21. As to the personal statements of the proposed individual guarantors, their suggested net worth was illusory, comprised mostly of retirement plans and IRA's as to which there would be significant taxes due if withdrawn, and which would in any event likely be unreachable to satisfy claims, and closely held corporations with totally speculative value. Of the purported $4 million listed on their financial statements, there was a grand total of $10,000 in cash. As to the IOC which was offered as a guarantor, the evidence also demonstrated that it too had little liquidity, with purported assets of $5.6 million comprised mostly of the value of the trademark being purchased from the Debtors, with a minimal amount of cash, and significant contingent liabilities in an undetermined amount that the IOC had agreed to assume as a result of its guaranty of various of the Leases being acquired by the franchisees.

22. The Bankruptcy Court applied a less stringent standard in finding adequate assurance, which it was not authorized to do. The error of the Bankruptcy Court is even more glaring here because there was another bidder, Fudruckers, clearly more qualified to perform the

obligations of the Lease and willing to pay more consideration for the Lease, that would have more closely afforded Frederick Towne the benefit of its bargain. To foist upon Frederick Towne a tenant that is totally unsuitable in all respects, of dubious creditworthiness, with guaranties of equally dubious value, all because the Debtors wanted to serve up the Lease to an agreed upon franchisee, when there were far better alternatives for Frederick Towne, the previous high bidder for the Lease that was more suitable as a tenant and which was willing to bid more for the Lease, was not only a poorly conceived transaction on the part of the Debtors, but one that the Bankruptcy Court should not have condoned under the guise of adequate assurance.

23.       Frederick Towne will likely succeed on the merits of its appeal because the Debtors failed to satisfy the express conditions of §365(B)(3) for adequate assurance, which the Bankruptcy Court acknowledged. As a matter of law, adequate assurance of future performance was not established by the Debtors, which requires that the Bankruptcy Court's ruling be overturned on appeal. Furthermore, had the Bankruptcy Court accepted the evidence before the Court, the Debtors' consolidated financials, it would have been compelled to find lack of adequate assurance. Clearly, Frederick Towne has a substantial case on appeal for purposes of determining whether to grant its motion for stay pending appeal, which weighs heavily in favor of granting a stay.

24.       Frederick Towne's request for a stay must be granted based on its clear ability to meet the requirement of irreparable harm. Frederick Towne will be exposed to severe harm from a number of factors if a stay is not granted. First, absent a stay, Frederick Towne will be prevented from pursuing appellate review, and will be left with no legal remedy to challenge the proposed assignment as a result of the operation of §363(m). The loss of its right to appeal, a

very significant right, is neither speculative nor remote, but actual and imminent, and would be a significant loss for Frederick Towne here.

25.        Second, absent a stay, as set forth in the accompanying Bradley Affidavit, Frederick Towne will lose goodwill with its valuable patrons at the Frederick Towne mall and its other tenants in the mall. (See Bradley Aff. at ¶2). As set forth in the Bradley Affidavit, the closure of the Ground Round restaurant which sits at the main entrance to the mall has tarnished the mall's presence. (See Bradley Aff. at ¶¶2-3). Further closure which is authorized by the Bankruptcy Court's Order, for an additional 90 days, will cause Frederick Towne to lose shoppers. According to the Bradley Affidavit, many shoppers require a sit down restaurant, and will go elsewhere outside the Frederick Maryland community, to Frederick Towne's competitor shopping area. (See Bradley Aff. at ¶¶2-3).

26.        Third, Frederick Towne will not have an adequate legal remedy against Frederick Pubs in the event of Frederick Pubs' default. The record before the Bankruptcy Court establishes that Frederick Pubs and its guarantors are highly leveraged, do not have the capital and liquidity necessary to meet the capital needs of operating a Ground Round restaurant – to make the necessary improvements to the Premises, cover the expenses with respect to the start up of the restaurant including stocking of the restaurant, and to pay operating expenses – nor do they have any additional borrowing capacity in the event their cash projections are not met.

27.        The record before the Bankruptcy Court establishes that Frederick Pubs and its principals do not have the assets to compensate Frederick Towne for damages in the event of a default under the Lease. Should Frederick Pubs run into difficulty meeting its obligations including its payment of rent, Frederick Pubs would not hesitate to file bankruptcy proceedings in order to gain leverage with its landlord, which would lead to further closure of the Premises.

Such a scenario based upon the record of the Bankruptcy Court is likely.

28.        Lastly, Frederick Towne holds no collateral or security, but merely guaranties which are only as good as the guarantors who stand behind them. Frederick Towne's damage remedy is inadequate if it is ineffective, and comes at the further expense of further closure of the store premises which further damage Frederick Towne.

29.        Here, when one considers the loss of goodwill, the tarnished image of the mall which has resulted from the extended closure, the loss of patrons to other neighboring communities, the economic loss from lost business, the loss of appellate review, the lack of any security or collateral, the prospect of Frederick Pubs's default under its lease, and the significant risk of further closure of the Premises, these circumstances add up to irreparable harm for Frederick Towne here. On the other hand, if the stay is granted, and the district court ultimately finds in favor of Frederick Pubs, any injury resulting to Frederick Pubs can be compensated reasonably in money.

30.        A stay is in the interest of all parties. A stay will allow the appellate court to fully analyze and determine the adequate assurance issues, and to avoid proceedings that Frederick Towne would be compelled to commence in pursuing its collection efforts against a shell corporation and its guarantors in connection Frederick Pubs' default under the Lease, which based upon the record appear likely, and the damages related thereto.

31.        Also, it is significant here that the assumption and assignment of the Frederick Lease is separate from the sale of the Franchise Assets which will form the basis for the Debtors' plan of reorganization, and the ultimate distributions to creditors. A stay of the consummation of the assumption and assignment of the Frederick Lease will not adversely affect the closing of the sale of the Franchise Assets and the $4.8 million consideration thereunder to be paid to the

Debtors. The Debtors cannot complain that the stay will be injurious to them or their efforts at developing and implementing a plan of reorganization. The evidence is just the opposite.

32.        The Bankruptcy Court's order authorizing the sale of the Franchise Assets provides that the Closing on the Franchise Assets is not dependent upon a closing on any New Restaurant Location , and that the buyer of the Franchise Assets, the IOC, is obligated to close notwithstanding any failure by the Debtors to obtain an order authorizing the assumption and assignment of any New Restaurant Location.   Thus, if the closing on the assumption and assignment of the Frederick Lease is stayed pending appeal, the sale of the Franchise Assets can go forward, and the Debtors can move forward with their plan of reorganization without any adverse effect from a stay.

33.        Frederick Towne accepted TGR as its tenant in the early 1990's, an affiliate of a multi million dollar company with more than 200 restaurants, and annual revenues in excess of $240 million. The Lease imposes strict requirements for assignment. This benefits not only Frederick Towne, but also the other tenants in the shopping center, and fosters the success of the shopping center and economic development in the locale where the shopping center is located. This is not a two party dispute. To allow an assignment to occur here, without the requisite showing of adequate assurance, surely would not benefit the public interest.

NOTICE

34.        In advance of filing Frederick Towne's emergency motion for a stay and the

scheduling of an emergency hearing, counsel for Frederick Towne telephoned: (a) counsel for

Frederick Pubs, Rick Pedone, Esq., Nixon Peabody, 100 Summer Street, Boston, MA 02110,

(617) 345-1300, and (b) counsel for the Debtors, Andrew G. Lizotte, Esq., Hanify & King,

Professional Corporation, One Beacon Street, Boston, MA 02108, (617) 423-0498, and advised them

that Frederick Towne would be proceeding by order to show cause for the relief requested herein.

Except as discussed above, no prior request has been made to this Court or any

court for the relief sought herein.

## CONCLUSION

For the foregoing reasons, and as set forth in the accompanying memorandum of

law, the order to show cause scheduling an immediate hearing on Frederick Towne's motion for

a stay pending appeal should be granted and a stay should be granted.

Lisa M. Solomon

Sworn to before me
this 2 day of August, 2004

Notary Public

FRANK JAMES CERZA
Notary Public, State Of New York
No. 02CE4744534
Qualified In New York County
Commission Expires May 31, 20 07